**FLORIDA AVOCADO GROWERS' EX-CHANGE v. UNITED STATES et al.**

**Customs Appeal No. 3624.**

Court of Customs and Patent Appeals.
March 19, 1934.

Francis M. Dolan, of Coral Gables, Fla., and Leland Hyzer and Julian S. Eaton, both of Miami, Fla. (Samuel L. Collins, of Santa Ana, Cal., and Phil D. Swing, of San Diego, Cal., of counsel), for appellant.

Charles D. Lawrence, Asst. Atty. Gen. (Ralph Folks, Sp. Atty., of New York City, of counsel), for the United States.

J. Lancelot Lester and Wm. H. Malone, both of Key West, Fla., and Siegel, Mandell & Stein, of New York City, for Reedy Forwarding Co.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Under the authority of section 516 (b) of the Tariff Act of 1930 (19 USCA § 1516 (b), the appellant protested the admission, free of duty, of fruit known as avocados, alligator pears, or avocado pears, imported from Cuba. The amended protest is too long for repetition here, but pertinent parts thereof will be referred to later herein when they become relevant.

The Third Division of the United States Customs Court overruled the protest, and from its judgment the appellant has appealed here.

The particular importation involved was imported by the Reedy Forwarding Company (appearing in this appeal as the party in interest, and, with the Government, as appellees) through the port of Tampa, Fla., in August, 1931. With reference to the description of the merchandise and assessment of duty, the collector at said port of Tampa reported:

"Description of Merchandise and Assessment

"38 crates avocados entered under par. 559, Tariff Act of 1897, and free of duty under section 316 of the Tariff Act of 1930, by virtue of the commercial reciprocity treaty between the United States and Cuba, ratified on December 11, 1902, or under the provisions of the act of December 17, 1903.

"Reasons and Authority for Action

"The collector is of the opinion that the merchandise is free of duty."

It is claimed by appellant that the merchandise is dutiable at the rate of 15 cents per pound under the provisions of section 1, paragraph 750, Tariff Act of 1930 (19 USCA § 1001, par. 750), which paragraph is as follows: "Par. 750. Avocados or avocado pears, also known as alligator pears, 15 cents per pound."

Section 316 of the Tariff Act of 1930 (19 USCA § 1316) contains the following provision "Sec. 316. *Cuban reciprocity treaty not affected.* Nothing in this chapter shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1 [sections 124 and 125 of this title]."

Attention is here called to the fact that a provision substantially identical to said section 316 has appeared in every general tariff act passed by Congress since the Cuban Reciprocity Treaty went into effect.

The portions of said Cuban Reciprocity Treaty (33 Stat. 2136) and the Act of December 17, 1903 (33 Stat. 3), pertinent to the issues involved in this appeal, are as follows:

"Cuban Reciprocity Treaty

"Article I. During the term of this convention, all articles of merchandise being the product of the soil or industry of the United States which are now imported into the Republic of Cuba free of duty, and all articles of merchandise being the product of the soil or industry of the Republic of Cuba which are now imported into the United States free of duty, shall continue to be so admitted by the respective countries free of duty.

"Article II. During the term of this convention, all articles of merchandise not included in the foregoing Article I and being the product of the soil or industry of the Republic of Cuba imported into the United States shall be admitted at a reduction of twenty percentum of the rates of duty thereon as provided by the Tariff Act of the United States approved July 24, 1897, or as may be provided by any tariff law of the United States subsequently enacted."

"Article VII. It is agreed that similar articles of both countries shall receive equal treatment on their importation into the ports of the United States and of the Republic of Cuba, respectively."

"Article XI. The present convention shall be ratified by the appropriate authorities of the respective countries, and the ratifications shall be exchanged at Washington, District of Columbia, United States of Amer-

ica, as soon as may be before the thirty-first day of January, 1903, and the convention shall go into effect on the tenth day after the exchange of ratifications, and shall continue in force for the term of five (5) years from date of going into effect, and from year to year thereafter until the expiration of one year from the day when either of the contracting parties shall give notice to the other of its intention to terminate the same."

"Act of December 17, 1903

" * * * That whenever the President of the United States shall receive satisfactory evidence that the Republic of Cuba has made provision to give full effect to the articles of the convention between the United States and the Republic of Cuba, signed on the eleventh day of December, in the year nineteen hundred and two, he is hereby authorized to issue his proclamation declaring that he has received such evidence, and thereupon on the tenth day after exchange of ratifications of such convention between the United States and the Republic of Cuba, and so long as the said convention shall remain in force, all articles of merchandise being the product of the soil or industry of the Republic of Cuba, which are now imported into the United States free of duty, shall continue to be so admitted free of duty, and all other articles of merchandise being the product of the soil or industry of the Republic of Cuba imported into the United States shall be admitted at a reduction of twenty per centum of the rates of duty thereon, as provided by the Tariff Act of the United States, approved July twenty-fourth, eighteen hundred and ninety-seven, or as may be provided by any tariff law of the United States subsequently enacted. The rates of duty herein granted by the United States to the Republic of Cuba are and shall continue during the term of said convention preferential in respect to all like imports from other countries: * * * "

Appellant contends that if the treaty is to be regarded as valid, the provisions of article I thereof do not require the free admission of avocados for the reason that avocados were not being imported into the United States free of duty, and were not free of duty under the laws of the United States at the time of the effective date of the Cuban Reciprocity Treaty; that alligator pears fall within the term "pears" in section 1, paragraph 262, of the Tariff Act of 1897 (30 Stat. 171), which paragraph reads as follows: "262. Apples, peaches, quinces, cherries, plums, and pears, green or ripe, twenty-five cents per bushel," and that, therefore, they were not free of duty, as fruits, under section 2, paragraph 559, of said act (30 Stat. 198), which paragraph reads: "559. Fruits or berries, green, ripe, or dried, and fruits in brine, not specially provided for in this Act."

It is also contended by the appellant that Cuba, at the time of the effective date of said treaty, imposed a duty upon alligator pears, and still imposes a duty upon them, and that, under the provisions for equal tariff treatment in said article 7, alligator pears should be regarded as dutiable under the said Tariff Act of 1930.

It is also the contention of the appellant, for several reasons assigned, that the said treaty with Cuba is invalid, and, for that reason, cannot operate to require a holding that the importation herein involved is free of duty. It is appellant's contention that the treaty was not ratified within the conditions prescribed by its terms or in accordance with the terms of the act of December 17, 1903; that the President of the United States had no power to negotiate the treaty, since it involved fixing revenues of the United States for a definite period of time; and that the act of Congress of December 17, 1903, could not ratify or make valid the treaty under the Constitution. On this phase of the case, it is, in effect, the contention of the appellant that the fixing of the duties was initiated by the President rather than by the House of Representatives of the United States Congress; that the fixing of such rate was a legislative duty devolving upon the Congress, the initiation of which must originate in the House of Representatives; that the ratification of the treaty could be nothing more than a delegation of its duties to the President, which the Constitution prohibits.

Facts and dates relating to the Cuban Reciprocity Treaty and the act of December 17, 1903, may be chronologically stated as follows: (1) The treaty was signed in Cuba on December 11, 1902. When signed, the treaty contained the provision that it should be ratified and the ratifications exchanged "as soon as may be before the thirty-first day of January 1903, and the convention shall go into effect on the tenth day after the exchange of ratifications * * *." Article 11. (2) The time for the exchange of ratifications was extended until March 31, 1903. (3) On March 19, 1903, the Senate of the United States consented to the ratification of the treaty after making several amendments, and in the treaty as ratified is found the following provision: "This convention shall not take effect until the same shall have been ap-

proved by the Congress." (4) On March 31, 1903, ratifications were exchanged at Washington. (5) On November 9, 1903, a special session of Congress was called to "determine whether the approval of the Congress shall be given to the said Convention." (6) On December 17, 1903, an act of Congress, which originated in the House, entitled "An Act to carry into effect a convention between the United States and the Republic of Cuba, signed on the eleventh day of December, in the year nineteen hundred and two," was approved by the President. Pertinent provisions of the act are quoted supra. (7) On December 17, 1903, the President issued his proclamation in accordance with the act of December 17, 1903.

The record is voluminous and the briefs of the parties discuss the numerous questions raised in great detail. The testimony of the witnesses, for the most part, is directed to the meaning of the terms "pear," "alligator pear," "avocado," and "avocado pear," and to the similarity in appearance, texture, use, etc., between the avocado pear and the "ordinary temperate-zone pear." Appellant also attempted to show the state of the avocado-pear industry in the United States as it existed at the time of taking the testimony, and at the time the Tariff Act of 1930 was passed (19 USCA § 1001 et seq.), as well as the conditions surrounding the production, importation, and consumption of alligator pears here and in Cuba, from a time prior to the passage of the Tariff Act of 1897 (30 Stat. 151) to the date of trial. It is in evidence that alligator pears were produced in Florida and California before the passage of the Tariff Act of 1897. Facts concerning production costs here and in Cuba, the qualities and quantities of the production of the two countries, and other facts relating to the avocado-pear industry, which we regard as immaterial to our decision, were also shown by appellant.

The United States Customs Court held that alligator pears were not pears within the provision of the Tariff Act of 1897, and that the plaintiff there, appellant here, had not proven that the importation was pears, commercially, since the proof, when taken in the most favorable light, could only establish that they were commercially known as pears in a limited area or portion of the United States. The Customs Court furthermore held that under a decision, by General Appraiser Howell, more particularly referred to hereinafter, decided prior to December 17, 1903, avocados were declared to be free of duty within the meaning of the Cuban Reciprocity

Treaty. The Customs Court held that the treaty was valid, making special reference to the fact that both houses of Congress approved the treaty, and that the act of Congress of December 17, 1903, corresponded to the terms contained in the treaty, and that the same had not been repealed.

The main question in the case, as we see it, upon this record, is: Were avocado pears, upon the effective date of said treaty, being imported into the United States free of duty? Counsel in argument have proceeded upon the theory that December 17, 1903, was the effective date of the treaty. Whether the treaty went into effect on that date or ten days later makes no difference in the decision of the issues in this case.

It seems to us that we must construe article 1 of the treaty to apply only to those articles which were, at the time of the effective date of the treaty, the subject of commerce between Cuba and the United States. The treaty definitely limited the application of article 1 to articles "which are now imported into the United States free of duty" and provided that such articles "shall continue to be admitted by the respective countries free of duty." This phrase clearly limits the application of article 1 of the treaty to goods which at that time (the effective date of the treaty) were being imported into the United States from Cuba, free of duty.

It is well-settled law that the classification of the collector must be presumed to be correct. It is equally well settled that it will be presumed that in making said classification the collector's findings as to all material and necessary facts were consistent with such classification. Vitelli & Son v. United States, 7 Cust. App. 243, 275, T. D. 36544; United States v. Barker Bros. et al., 17 C. C. P. A. (Customs) 6, T. D. 43310.

We think the action of the collector in classifying the merchandise at bar as free, for the reasons stated in his report, placed upon the protestant the duty of proving that, at the time of the effective date of the treaty, avocado pears were not being imported into the United States from Cuba free of duty. If the protestant has proven that, on the effective date of the treaty, they were not being imported into the United States at all, or if the protestant has proven that on such date they were being imported and were being assessed with duty, then it seems clear that the protest should have been sustained.

The record before us does not show that avocado pears were not imported from

Cuba prior to the effective date of the treaty, or that avocado pears imported from Cuba prior to such date were assessed with duty.

On account of the periodical destruction of the records of imports at most of our ports of entry and in the departments of the Government, little competent evidence could be introduced touching this phase of the question. The protestant attempted to show the facts with respect to the importation of avocados prior to December 1903, by the introduction of letters from collectors at certain ports, including those of New Orleans, Key West, and Tampa, and also by letters from certain departments of the Government. It was alleged in the protest that the customary ports of entry for avocados from Cuba were Miami, Key West, Tampa, New York, and New Orleans. The only information of value on this particular phase of the question is contained in a letter, introduced into the record, from the collector at the port of New Orleans, which letter shows that in the year 1903, and prior to December, thereof, there had been made at that port five entries of avocados from Cuba, containing in the aggregate 109 crates. There were no available records elsewhere as to importations of avocados from Cuba prior to December, 1903. Said letter from the collector at New Orleans, and the other documents introduced, contained no information as to whether avocados, if imported before December, 1903, were passed free of duty or were assessed with duty.

The Government, in this court, supports the position taken by the importer, and contends that avocados from Cuba should be held free of duty by virtue of the provisions of the Cuban Reciprocity Treaty and the act of December 17, 1903, and that the trial court properly overruled the protest of appellant. The Government argues that decisions of the Board of General Appraisers and other related facts show that upon the effective date of the treaty avocados were free of duty, and that by reason of long-continued administrative practice, in passing avocados from Cuba free of duty, on account of said treaty, Congress has approved of such administrative practice, and has approved of the judicial action taken by the Board of General Appraisers, to which action further reference will be made.

On November 22, 1897, in T. D. 18670, Synopsis of Decisions 1897, page 1061, W. B. Howell, then Assistant Secretary of the Treasury, in a document addressed to the collector of customs at Key West, Fla., directed the classification of alligator pears as "pears" under section 1, paragraph 262 of the Tariff Act of July 24, 1897 (30 Stat. 171).

On November 12, 1900, the Board of General Appraisers, in a decision by General Appraiser Howell, who was formerly Assistant Secretary of the Treasury, T. D. 22603, 3 Treas. Dec. 915, reversed the ruling made in the instructions to the said collector of customs at Key West, Fla. On account of the importance of the opinion in said T. D. 22603, we quote its material parts:

"The goods subject of this protest are invoiced as 'five crates avocado pears.' They were assessed with duty at 25 cents per bushel, under paragraph 262 of the tariff act of July 24, 1897, which enumerates 'apples, peaches, quinces, cherries, plums, and pears, green or ripe.' They are claimed to be free of duty under section 2, paragraph 559 of said Act, which is as follows:

"Fruits or berries, green, ripe, or dried, and fruits in brine, not specially provided for in this Act."

In a special report the appraiser states:

"The merchandise consists of the *avocado* pear, also called the alligator pear, which is the fruit of the *Persea gratissima*, a tree embraced in the genus *Lauraceae*, which genus covers about 400 species. The 'pear' of ordinary use is the *Pyrus communis*. The term 'pear,' as used in the tariff, is construed to cover any fruit generally so denominated. The *avocado* is called a pear evidently in all English-speaking countries. Its tree does not belong to the true pear family, but the general designation of the fruit, both in domestic and trade circles, as a pear is deemed sufficient to establish its otherwise uncertain place. The merchandise was, therefore, returned for duty as pears, 25 cents per bushel, under paragraph 262, N. T.

"The Century Dictionary describes the pear as 'The fruit of the pear tree; the tree *Pyrus communis.*' The same authority describes the *avocado,* or alligator pear, as:

"The fruit *Persea gratissima,* natural order *Lauraceae;* a tree common in tropical America and the West Indies. It is from 1 to 2 pounds in weight, is pear-shaped, of a brownish-green or purple color, and is highly esteemed—though rather as a vegetable than as a fruit. The pulp is firm and marrowlike, whence the fruit is sometimes known as *vegetable marrow,* or *midshipmen's butter.* The oil is said to be equal to palm oil for soap.

The tree is an evergreen, growing to the height of 30 feet.

"It appears from the foregoing, and we so find, that the *avocado*, or alligator pear, is the fruit of a tree of a botanical family quite distinct from the true pear tree.

"We further find from a report received by the Board from the acting pomologist of the Department of Agriculture that the name 'pear,' as applied to this fruit, is based entirely upon its similarity in form to the common pear, the two fruits having no other points of close similarity in common, either in botanical character or the uses to which they are ordinarily put, and that the alligator pear is considered entirely distinct from the common pear by both producers and consumers.

"In view of these findings, we sustain the protest and reverse the decision of the collector with instructions to reliquidate the entry accordingly." Note G. A. 4510.

This decision was never appealed from. As far as this record shows, or as far as the decisions of the Board of General Appraisers or of any other court show, this decision of the Board of General Appraisers settled the dutiable status of alligator pears.

On March 14, 1910, in Abstract 22919, 19 Treas. Dec. 291, the Board of General Appraisers, in an opinion by General Appraiser Waite, referred to the said opinion of General Appraiser Howell and sustained the protest of an importer who had protested against the assessment of duty on alligator pears which the importer claimed to be free of duty. This is an abstract decision. It merely holds that the importation was not pears, but fruits, not specially provided for, without disclosing from what country the importation was exported.

On June 13, 1924, in Abstract 47487, 45 Treas. Dec. 1002, the Board of General Appraisers, in a decision by General Appraiser Waite, held that avocados from Cuba were free of duty by virtue of the Cuban Reciprocity Treaty. T. D. 22603, supra, was relied upon as authority. That was the last ruling on this question by any competent authority which has been called to our attention. There was no appeal from either of the two decisions last referred to, and it thus appears that the Board of General Appraisers, which subsequently became the United States Customs Court, from November 12, 1900, to this date has consistently followed the decision announced by General Appraiser Howell on November 12, 1900.

It is urged by appellant that this did not adjudicate the question, inasmuch as the decision of the Board of General Appraisers was not binding upon the Treasury Department, and that the Treasury Department could have changed the classification. It is not shown that the Treasury Department, subsequent to November 12, 1900, ever directed classification contrary to the above-mentioned decisions, and in the absence of facts to the contrary, it must be concluded that the United States Government acquiesced in the free-of-duty classification of avocados from November 12, 1900, to the date of the instant importation.

In view of our conclusions, it is not important for us to determine whether or not this record shows either a legislative adoption of judicial interpretation or administrative practice. We do, however, regard the construction placed uopn the law and the treaty between this Government and the Government of Cuba as an important consideration in cases like the one at bar. United States v. Payne (D. C.) 8 F. 883, 2 McCrary 289; Lattimer v. Poteet, 14 Pet. 4, 10 L. Ed. 328.

Appellant's contention relating to the "equal treatment" provision in article 7, supra, may be disposed of by pointing out that the record before us does not contain any showing that alligator pears were, on the effective date of the treaty, or are now, made dutiable by the Republic of Cuba, or that any alligator pears from this country have been exported to Cuba.

With reference to the question raised by the appellant as to the validity of the Cuban Reciprocity Treaty, we find it unnecessary to devote much time to discussion of this matter. For the purposes of this case it might be regarded as a sufficient answer to appellant's contention to point out that, in the Tariff Act of 1930, Congress treated the Treaty and Act of December 17, 1903, as valid by the special reference made to it, which we have hereinbefore quoted. Moreover, it is admitted by the appellant that the validity of the treaty was not questioned by Congress and that by paragraph 750 of the Tariff Act of 1930 it was not the intent of Congress to make alligator pears from Cuba dutiable unless they were not free of duty at the time of the effective date of said reciprocity treaty.

The provisions of the Cuban Reciprocity Treaty, and the Act of Congress of December 17, 1903, have, on several occasions, been under consideration by our courts, and in every

one of the decided cases involving such consideration the treaty and the act were given full force and effect, and the validity thereof was in no respect questioned. United States v. American Sugar Co., 202 U. S. 563, 26 S. Ct. 717, 50 L. Ed. 1149; Faber, Coe & Gregg, Inc., v. United States, 19 C. C. P. A. (Customs) 8, T. D. 44851.

That Congress, in passing the Tariff Act of 1930, and providing for a duty on alligator pears, did not intend to repudiate the provisions of the Cuban Reciprocity Treaty and the Act of December 17, 1903, and that it did not question the validity of such treaty and statute, we think is conclusively shown by the facts hereinbefore recited. In this connection, it is not without interest to consider the fact that when the Tariff Act of 1930 was before the Senate for consideration, the senior senator from Florida, Mr. Fletcher, proposed an amendment to that part of the act which provided that the Cuban Reciprocity Treaty should not be affected. The amendment would have excepted avocado pears and mangoes from that portion of the act. This amendment was, after thorough discussion, rejected by the Senate.

From the foregoing, it seems to us that it clearly appears that Congress never intended, in the act of 1930, to make alligator pears from Cuba dutiable unless such tariff treatment was fully warranted under the terms of the Cuban Reciprocity Treaty and the Act of December 17, 1903. In this view of the case, it may seem to be unnecessary for this court to pass upon the question as to whether or not, as a technical legal proposition, the said treaty and said act may be logically defended against the attacks here made.

Since appellant's counsel have stressed this phase of the case at great length and with much earnestness, and since certain contentions are made here which do not seem to have been pressed in the decided cases above referred to, we feel warranted in briefly indicating our views on the question. Our views are substantially those expressed by the trial court in the opinion by Judge Evans. As we see the question, it is not a case of Congress delegating any of its powers to the President. By its Act of December 17, 1903, it embodied the substance of the treaty into a legislative act and authorized the President to make such law effective by proclamation. After the Spanish-American War, it was desirable for this country and Cuba to have certain reciprocal tariff adjustments. It was well known that revenue measures must originate in the House of Representatives. With this fact fully in mind, the treaty which brought the minds of the two nations together was negotiated and ratified conditionally upon the approval of Congress. Congress not only approved the provisions of the treaty, but by act, originating in the House, enacted the provisions of the treaty into statutory law. Just how this Government could have properly arrived at and secured reciprocal tariff relations with Cuba in any other way has not been suggested here. On account of our views thus expressed, it would seem that appellant's other contentions with reference to the invalidity of the treaty require no consideration here.

The presentation on the part of the appellant has been unusually strong and full, as well as entirely ingenuous and frank. Appellant has urged that it has pointed out to this court clearly how it may hold alligator pears imported from Cuba to be dutiable without doing violence to any settled principle of law. We cannot agree that we can sustain the contentions of appellant without making a holding which we believe to be wholly contrary to law. The relief which appellant seeks here is a proper matter for the consideration of other branches of our Government, and if appellant obtains relief from the conditions complained of, it would seem to us that it must come from an appeal elsewhere than to the courts.

We conclude that the collector properly classified the merchandise, and that the United States Customs Court committed no error in overruling appellant's protest, and its judgment is affirmed.